This is a workmen's compensation case.
The appellant, employee's widow, appeals from the trial court's action in granting the appellee-employer's Rule 41 (b), ARCP, motion.
The issue is whether the trial court erred in granting the Rule 41 (b) motion. Put another way, did the trial court err in finding a lack of causal connection between the coronary occlusion (heart attack) suffered by the employee and his employment. We find no error and affirm.
At the outset, we note that Rule 41 (b), ARCP, provides in pertinent part as follows:
 "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. . . ."
The Committee Comments to Rule 41 (b) reveal the following:
 "In a jury case, Rule 50 applies and the court is limited to a question of law (thereby preserving jury trial right) as to the sufficiency of plaintiff's prima facie case. In a non-jury case, the court, under Rule 41 (b), as ultimate trier of fact, is free to weigh the evidence and the credibility of the witnesses. . . ."
We agree with the above comment. Thus, it is clear that since extensive testimony was presented by appellant, it was permissible for the trial court to weigh the evidence and the credibility of the witnesses.
In reviewing the trial court's disposition of a Rule 41 (b), ARCP, motion, this court need only determine whether the trial court's action is supported by the evidence. Lang v. Cone,542 F.2d 751 (8th Cir. 1976); *Page 499 Woods v. North American Rockwell Corporation, 480 F.2d 644
(10th Cir. 1973). As noted supra, we find it is.
The record reveals the following. The employee had been employed by the employer for over 25 years; he was 58 years old and a hard working man. In late December, the employee took a vacation. He returned to work on January 6, 1974. However, prior to returning to work, he visited a physician, complaining of indigestion and heartburn. This visit to the physician resulted in no positive medical findings. A short time after returning to work, he again saw the doctor, complaining of a sore throat.
Subsequent to returning to work on January 6, the employee worked 18 consecutive days. Some overtime work was performed during this period. Members of the employee's family testified that during this 18-day period the employee was tired and irritable.
On the morning of January 25, shortly after "clocking in" but before actually beginning physical work, the employee suffered a heart attack and died.
The physician, who had attended the employee on the occasions referred to above, testified that the cause of death was a coronary occlusion; that when he had seen the employee his heart and blood pressure had been "all right." In response to the following question by the court, the doctor replied, "No."
 "Q Is there any way in your medical knowledge that you can testify that this man's employment caused his heart attack?"
To put the issue before us in proper context, we deem it necessary to quote extensively from City of Tuscaloosa v.Howard, 55 Ala. App. 701, 705-06, 318 So.2d 729, 732 (1975), authored by Presiding Judge Wright:
 "As pointed out by Larson in his treatise, Workmen's Compensation Law, Vol. 1A, Sec. 38.83, the essence of the problem, particularly in heart attack cases is causation. How is it to be determined that the job caused the heart attack? It is certainly not enough to show that plaintiff . . . had a heart attack, . .
 "Larson points out that causation has two distinct parts: the legal and the medical. He says:
 `The law must define what kind of exertion satisfies the test of "arising out of the employment"; then the doctors must say whether the exertion which has been held legally sufficient to support compensation has in fact caused the heart attack.'
 How to define the legal test of cause of injury arising from an act of employment? It surely cannot be limited to some unusual strain or exertion not ordinary to the job. Of course, in case of occurrence of an unusual exertion or happening, the determination of legal causation is generally made easier. It appears that the proper test was set out in Pow v. Southern Construction Co., supra, [235 Ala. 580, 180 So. 288] which we paraphrase as follows: If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the statute. Such can be the legal test of causation. However, the medical test of causation must also be met — that is, that such exposure, though operating with or upon other exposure common to all, was in fact the contributing cause of the injury. This test meets the employment versus nonemployment exertion test of Larson stated in 65 Mich.L.Rev. 441." [Emphasis supplied.]
Applying the above stated test, in this instance, as we did in Howard, supra, we cannot say the trial court erred to reversal.
In so applying the legal test of causation, we find that the employee worked eighteen days without an intervening off day. We cannot say that the trial court *Page 500 
erred in finding that such facts do not constitute an exposure to a danger or risk materially in excess of that to which people not so employed are exposed. We further find that the employee's exertion, as noted above, does not meet the "medical test" as set out in Howard, supra. Even if it be conceded that the "exposure" was present, there is evidence to support the trial court's conclusion that this exposure was not the contributing cause of the injury.
In view of the above, the case is due to be affirmed.
AFFIRMED.
BRADLEY, J., and PAUL, Retired C.J., concur.